**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| IN RE | : | CHAPTER 7 |
| IRON AGE CORPORATION | : | CASE NO. 07-40217-JBR |
| IRON AGE CANADA LTD., | : | CASE NO. 07-40219-JBR |
| <u>DEBTORS</u> | : | |

**MEMORANDUM OF DECISION ON LANDLORD'S MOTION FOR ORDER ALLOWING AND DIRECTING IMMEDIATE PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS**

This matter came before the Court on Edward B. McNally's ("Landlord") Motion for Order Allowing and Directing Immediate Payment of Administrative Expense Claims (Docket # 617) and Iron Age Corporation's and Iron Age Canada Ltd. ("Debtors") Objection (Docket # 625) thereto. The Landlord seeks payment of postpetition rent for property that he leased to the Debtors by virtue of a lease entered into prior to the filing of the petition. The Landlord argues that pursuant to 11 U.S.C. §§ 365(d)(3), 503(a), and 503(b)(1)(A) his claim is an administrative expense claim and that he is entitled to immediate payment.

**FACTS**

The parties agree on most of the facts in this case. The Landlord and the Debtors entered into a lease agreement ("Lease") with respect to real property located in the Poplar Forest Center, Building 2, Space A, Lynchburg, Virginia on April 2, 2006. The Debtors ceased making monthly rent payments at the end of October 2006. (Hammock Affidavit ¶ 3; McNally Affidavit ¶ 3). The Debtors put up a "going out of business" sign at the premises shortly thereafter. (Hammock Affidavit ¶ 3; McNally Affidavit ¶ 4). The Debtors removed most of their property from the premises, but never completely

removed all of their property.  (Hammock Affidavit ¶ 4; McNally Affidavit ¶ 3).  The Landlord obtained a key to the premises from the Debtors, but the Debtors retained a key as well.  (Hammock Affidavit ¶ 4; McNally Affidavit ¶ 8).  The Debtors assert that they retained a key only through oversight and they believed that all keys had been returned to the Landlord.  (Hammock Affidavit ¶ 4).  The Landlord states that he obtained a key for the purposes of preventative maintenance.  (McNally Affidavit ¶ 8).

The Debtors filed a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code on January 22, 2007.  The Landlord attempted to get the Debtors to terminate the Lease postpetition, sometime during February 2007, but the Debtors would not do so.  (McNally Affidavit ¶ 15).  The Debtors' manager, David Hammock, indicates that he "assumed that it was clear to the Landlord that Iron Age had closed the Forest Store and vacated and surrendered the premises" prior to the petition date.  (Hammock Affidavit ¶ 4).  The Landlord, however, indicates that Mr. Hammock was the only person to speak to him regarding the Lease and that at no time during those conversations did Mr. Hammock advise him that the Debtors wished to terminate the Lease.  (McNally Affidavit ¶¶ 10, 12).  Further, the Landlord indicates that he would not at that time have accepted such termination had it been proffered.  (McNally Affidavit ¶ 10).  The Landlord asserts, and the Debtors never contested, that the Debtors paid the electric bills for the property through April 2007.  (McNally Affidavit ¶ 13).

**POSITIONS OF THE PARTIES**

2

The Landlord's position is that he is entitled to an administrative expense claim for postpetition rent, because 11 U.S.C. § 365(d)(3) required the Debtors to "timely perform all [their] obligations…under any unexpired lease of nonresidential real property, until such lease is assumed or rejected…" Further, the Landlord argues that post-petition rent under section 365(d)(3) gives rise to an automatic administrative expense under section 503(b)(1). The Landlord contends that the Lease was in effect at the time of the filing and that the Debtors failed to assume or reject the Lease prior to the time set forth in 11 U.S.C. § 365(d)(4)(A)(i)(the "Automatic Rejection Date"), therefore, the Debtors are obligated to pay post-petition rent for the period of time prior to the Automatic Rejection Date.[1]

The Debtors assert that in order for the rent to qualify as an administrative expense claim, the rent must have been a necessary preservation expense under 503(b)(1)(A). That is, it must (1) have arisen from a transaction with the estate, and (2) it must have benefited the estate in some demonstrable way. The crux of the Debtors' argument is that the Lease was terminated prior to the petition date by way of the Debtors' surrender, therefore, it was neither part of nor of benefit to the Debtors' estate.

The Debtors also object to the amount of the Landlord's claim, arguing that the amount of the claim should be based upon the amount of benefit the Lease conferred upon the Debtors' estate, rather than on the terms of the Lease. Finally, the Debtors

---

[1] 11 U.S.C. § 365(d)(4)(A) provides that "an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected…if the trustee does not assume or reject the unexpired lease by the earlier of – (i) the date that is 120 days after the date of the order for relief…" Section 365(d)(4)(B)(i) provides a mechanism for debtors to extend the 120-day period. The Debtors did not seek to extend the 120-day period with respect to the Lease at hand.

3

claim that the Landlord was required under Virginia law to mitigate its damages, yet failed to do so.

**DISCUSSION**

The Debtors' primary argument is that they terminated the Lease prepetition. The Court is unable to find that the Debtors had a right to terminate the Lease prepetition or that they gave sufficient notice, by words or actions, to terminate the Lease had such a right existed. For the following reasons, the Court finds that postpetition, pre-rejection rent is entitled to treatment as an administrative expense claim under 11 U.S.C. § 503(b)(1) and, in this case, should be paid immediately.

**A. Lease Termination**

The Debtors did not terminate the Lease prior to the filing of their petition. The Lease is clear that the Debtors did not have a right to terminate it, even in the event of a default by the Landlord. (Lease ¶ 21). [2] At most, the Debtors were in default under the Lease and the Landlord elected to maintain the Debtors' right to possession and continue the Lease in effect pursuant to the Landlord's default remedies. (Lease ¶ 20(A)(II)).

Had a right to terminate existed, the Debtors did not provide sufficient notice for termination. Under Virginia law, a notice of lease termination must be "clear and unequivocal, leaving no doubt as to the intention of the party giving it." *H.N. Patterson v. Nat'l Advertising Co.*, 193 S.E.2d 676, 678 (Va. 1973). The Debtors point to a number of facts to support their contention that the Lease was terminated. First, the Debtors emphasize that they ceased paying rent and ceased conducting business on the premises. Second, the Debtors direct the Court's attention to the fact that they returned all but one of the keys to the premises to the Landlord. Finally, the Debtors assert that they

---

[2] The Debtors did not move to reject the Lease in these proceedings.

4

personally informed the Landlord that they had ceased conducting business and were vacating the premises. During the period following these actions, the Debtors continued to pay the electric bills for the premises. In light of these inconsistent actions, the Debtors' cessation of rent payments and vacation (as that term is defined in paragraph 19(A) of the Lease) of the premises did not amount to a clear and unequivocal notice of termination. While the Debtors are correct that their abandonment of the property for more than 30 days constituted a default under paragraph 19(A) the Lease, such a default did not give the Debtors the right to terminate the Lease. Upon default, the Landlord, at its option, could have elected either to terminate the Debtors' right to possession or maintain the right to position and continue the Lease in effect. (Lease ¶¶ 20(A)(I) and (II)). There is no evidence that the Landlord terminated the Debtors' right to possession or terminated the Lease.

If "the tenant uses language which is ambiguous, makes use of expressions which leave matters at the conclusion of the term contingent on something to be done or some arrangement to be made, there is no sufficient notice to quit." *Epes v. Palmieri*, 25 S.E.2d 279, 280 (Va. 1943). Here, the affidavit of Mr. Hammock states that he "assumed that it was clear to the Landlord" that Debtors had surrendered the property and that he was "under the impression that it was being handled from Iron Age on a corporate level." (Hammock Affidavit ¶ 4). These statements belie the assertion that notice was clear and unequivocal; they indicate ambiguity and contingency on further action of the Debtors corporate office. Given the payment of electric bills by the Debtors and the statements by Landlord that he was never informed of an intent to terminate the Lease, the Court

5

finds that even if the Lease could have been terminated by the Debtors, they failed to do so because they did not give sufficient notice. (McNally Affidavit ¶¶ 10, 12-13).

**B. Administrative Claim**

Section 365(d)(3) of the U.S. Bankruptcy Code deals with the treatment of unexpired, non-residential leases like the one at issue in this case. It provides that "the trustee shall timely perform all the obligations of the debtor…arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." 11 U.S.C. § 365(d)(3). This provision was added to the Code to "alleviate the unique financial strains the Code placed upon the commercial lessor," namely that the lessor was formerly unable to collect rent from the debtor-tenant while at the same time prevented from taking any action to re-let the premises. *In re Pyxsys Corp.*, 288 B.R. 309, 312 (Bankr. D. Mass. 2003)

Section 503(b)(1) of the U.S. Bankruptcy Code provides that "there shall be allowed administrative expenses …including the actual, necessary costs and expenses of preserving the estate…" 11 U.S.C. § 503(b)(1)(A). With respect to the interplay between sections 365(d)(3) and 503(b)(1)(A), many courts have held, and this Court agrees, that the "notwithstanding section 503(b)(1)" clause has eliminated the so-called "benefits test" applied by courts in determining whether an expense is necessary to preserve the estate. *In re Pyxsys Corp.*, 288 B.R. at 313 (citations omitted). Therefore, the administrative rent claim need not "reflect an objective benefit to the estate." *Id.* (citations omitted). Additionally, this Court agrees that landlords are entitled to assert claims based on the Lease terms, rather than according to "a reasonable value based upon

6

benefit to the estate." *Id.; see In re Brennick*, 178 B.R. 305, 307 (Bankr. D. Mass. 1995). The Landlord's claim in this case is a "garden variety administrative claim for services already rendered" and as in *Pyxsys*, it shall be paid immediately.

Finally, the Landlord in this case did not have a duty to mitigate its damages prior to the Automatic Rejection Date. In the case referred to by the Debtors, *Prologis Trust v. DuPont Commercial Flooring Systems, Inc.*, 63 Va. Cir. 347, 353 (Va. Cir. Ct. 2003), the duty to mitigate arose in a different context, where **after** rejection of a lease, a landlord sold the debtor's property that remained on the leased premises. As discussed above, the Lease in this case was never terminated or rejected, therefore, the Landlord was within his rights under the terms of the Lease to continue the Lease in effect. Section 365(d)(3) "does not require the lessor to take any action" prior to rejection. *Towers v. Chickering & Gregory (In re Pacific-Atlantic Trading Co.)*, 27 F.3d 401, 405 (9th Cir. 1994).

**CONCLUSION**

The Court hereby GRANTS the Landlord's Motion for Order Allowing and Directing Immediate Payment of Administrative Expense Claims and orders the immediate payment of $8,211.84 to the Landlord.[3]

A separate order shall issue.

Dated: November 30, 2007                    By the Court,

---

[3] The Landlord's Proof of Claim seeks $7,820.88 in rent and 10% of that amount ($782.08) in late charges as an administrative expense claim. Paragraph 25(G) of the Lease only provides for a 5% late charge on overdue payments. Therefore, the correct amount of late charges is $391.05 and the administrative expense claim has been reduced accordingly.

7

*[signature: Joel B. Rosenthal]*

_____
Joel B. Rosenthal
United States Bankruptcy Judge

Case 07-40217    Doc 663    Filed 11/30/07    Entered 11/30/07 13:06:16    Desc Main
                    Document      Page 8 of 8